GREENAWAY, JR., Circuit Judge,
dissenting, with whom CHAGARES, JORDAN, HARDIMAN and GREENBERG, join.
My colleagues have determined today that “I ¥ boobies” is an ambiguous phrase that may connote an attraction to female breasts, but which falls under the protection of the First Amendment in the middle school context because it may plausibly be interpreted as commenting on a political or social issue. Reasonable minds may come to varying conclusions on this test, but one thing is not open to debate: a school district faced with the same dilemma in the coming weeks, months, or years is given no greater guidance regarding its ability to determine whether a particular message may be proscribed than before the Majority opinion issued.
The Majority lauds the intent of the two middle schoolers responsible for introducing “I ¥ boobies! (KEEP A BREAST)” bracelets into their school, which encouraged serious discussion regarding a medical issue of increasing social import. Appellees’ actions may or may not reflect an admirable maturity, but the intent of Appellees is not at issue. In many cases, when the First Amendment is implicated, the intent of the speakers will be admirable or at worst benign. The Majority concludes that, as long as the ambiguous speech may be interpreted by a reasonable person as plausibly related to a political or social issue, it is protected. Despite its express disavowal of intent as a consideration, the Majority inadvertently re-injects the students’ intent into the fray by mandating an analysis of whether a political or social issue is addressed by the speech. This is improper but it is not my sole criticism.
*339 The Majority’s test leaves school districts essentially powerless to exercise any discretion and extends the First Amendment’s protection to a breadth that knows no bounds. As such, how will similarly-situated school districts apply this amorphous test going forward? The Majority’s test has two obvious flaws. First, what words or phrases fall outside of the ambiguous designation other than the “seven dirty words”? Second, how does a school district ever assess the weight or validity of political or social commentary? The absence of guidance on both of these questions leaves school districts to scratch their heads.
Practical problems with the Majority’s test abound. Where and how do school districts line-draw regarding the nouns used to describe the subject matter of the particular awareness campaign? The Majority has established that at opposite ends of the spectrum are “boobies,” on the one hand, and “tits,” one of the “seven dirty words,” on the other hand. What lies between those two extremes and how a school district is to make a principled judgment going forward remain open questions. No doubt, there are some words and phrases that all would agree should be afforded no protection in the middle school context, despite their use in promoting an important social issue. My recalcitrance to extend First Amendment protection to the slogan at hand is simple—why is this word, “boobies,” different? Why does it deserve protection? Is “boobies” a term that is inherently innocuous or sophomoric, as the Majority asserts? As noted in the Majority, “ta tas” is used as the descriptive term in some breast cancer awareness campaigns. The ambiguity of “ta tas” in this context is beyond question. What also seems beyond question is that the school district, according to the Majority, must lay dormant to a student’s use of “ta tas” or any synonym of “breast” (other than “tits”) as long as the student is commenting on a political or social issue, here, breast cancer awareness. The lack of certitude or a workable parameter unnecessarily handcuffs school districts.
What of the circumstance when an anatomically correct term is used in an awareness campaign? Applying the Majority’s test, “I ¥ penises,” “I ¥ vaginas,” “I ¥ testicles,” or “I ¥ breasts” would apparently be phrases or slogans that school districts would be powerless to address. Would the invocation of any of these slogans in a cancer awareness effort fail to garner protection under the Majority’s test? It would appear not. What of the other slogans that the Majority mentions in its opinion that are sufficiently ambiguous? The Majority blithely states that “it does not enjoin the School District’s regulation of other types of apparel, such as the ‘Save the ta-tas’ T-shirt or testicular-cancer-awareness apparel bearing the phrase ‘feelmyballs.org.’” (Maj. Op. 71.) This is exactly my concern. What may a school district do? These phrases are both ambiguous and speak to political and social issues. How is a school district now better able to discern when it may exercise its discretion to impede the use of a particular slogan, as it relates to an awareness program, than before the issuance of this opinion?
The other practical problem which arises from application of the Majority’s test is judging the validity of political and social comment. In the context of these social awareness campaigns, when would the students’ involvement not invoke political or social comment? The constriction of “plausibly be interpreted as” adds little to our discourse. For instance, when would a student using a term that is admittedly ambiguous not be able to assert that the use of the offending word, term, or phrase is speech that is commenting on a political *340 or social issue? What is the balancing that a school district can/should/may engage in to determine the merit or value of the proposed political or social comment? The unabashed invocation of a lewd, vulgar, indecent or plainly offensive term is not what is at issue here; what is at issue is the notion that we have established a test which effectively has no parameters. The political or social issue prong entirely eviscerates the school district’s authority to effectively evaluate whether the student’s speech is indeed protected. This shortcoming in the application of the test exemplifies its inherent weakness—a failure to resolve the conundrum school districts face every day.
In light of the Majority’s approach, school districts seeking guidance from our First Amendment jurisprudence in this context will find only confusion. I cannot adhere to this approach. I respectfully dissent.